UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABOLFAZL HOSSEINZADEH,<br><br>            Plaintiff,<br><br>    v.<br><br>BELLEVUE PARK HOMEOWNERS ASSOCIATION, *et al.*,<br><br>            Defendants. | CASE NO. C18-1385-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 18). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and DENIES the motion in part for the reasons explained herein.

**I.      BACKGROUND**

Plaintiff Abolfazl Hosseinzadeh and his family were born in Iran. (Dkt. No. 1 at 3.) Plaintiff purchased a condominium unit at Bellevue Park (the "Condominium Unit"), which is managed by Defendant Bellevue Park Homeowners Association ("Defendant BPHOA"), a nonprofit corporation whose membership is composed of all of the condominium unit owners at Bellevue Park. (*Id.* at 2–3.) Defendant Adrian Teague is one such owner. (*Id.* at 3.) In July 2016, Defendant Teague was appointed to a position on the Board of Directors for Defendant BPHOA

1  (the "Board") and he currently serves as the Board's president. (*Id.*) Defendant Jennifer Gonzales
2  is another owner at Bellevue Park. (*Id.*) In January 2017, she was elected to the Board, where she
3  currently serves as a governing person. (*Id.*)

4  Plaintiff allowed his mother and father to reside in the Condominium Unit. (*Id.* at 3.) In
5  2001, after receiving approval from the Board, Plaintiff installed a satellite dish on the
6  Condominium Unit so that his parents could watch Persian programs. (*Id.*) Some members of the
7  Board responded negatively to the satellite dish's installation. (*Id.* at 4.) Board member
8  Rosemary Ovadia said that Plaintiff's parents should "learn English or go back to their country."
9  (*Id.*) Another Board member questioned who Plaintiff and his family were communicating with
10 via the satellite. (*Id.*) Plaintiff filed a complaint with the Human Rights Commission, which
11 ultimately resulted in an agreement where Plaintiff kept the satellite and the Board members took
12 anti-discrimination classes. (*Id.*) One Board member resigned before the agreement was signed.
13 (*Id.*) In 2002, Plaintiff transferred ownership of the Condominium Unit to his sister, Ms. Akram
14 Hosseinzadeh, who continued to allow Plaintiff's parents to reside in the Condominium Unit. (*Id.*
15 at 2–3.)

16 Sometime around April 2012, Board member Wilma Edmonds retained MacPherson's
17 Property Management ("MacPherson's") on behalf of Defendant BPHOA. (*Id.* at 4.) On April
18 13, 2012, MacPherson's removed the satellite dish. (*Id.*) As a result of the satellite's removal,
19 Plaintiff filed a second complaint with the Human Rights Commission. (*Id.*) In response, Board
20 President John Jessen promised to reinstall the satellite, but no such reinstallation has occurred to
21 date. (*Id.*)

22 In August 2014, Defendant BPHOA retained the law firm Pody & McDonald to collect
23 past due assessments. (*Id.*) In November 2014, the Board passed a measure to automatically send
24 an owner's account to collections when the owner's delinquent balance was $1,000 or greater.
25 (*Id.* at 5.) At this time, the Condominium Unit, still owned by Ms. Hosseinzadeh, was identified
26 as a past due unit, and the account was forwarded to Pody & McDonald for collection. (*Id.*) As a

result, on November 14, 2014, Pody & McDonald placed a lien on the Condominium Unit, for an alleged unpaid balance of $432.98 through November 1, 2014. (*Id.*) Shortly thereafter, Pody & McDonald instituted foreclosure proceedings against the Condominium Unit. (*Id.*) Defendants Teague and BPHOA authorized a substantial amount of attorney fees on the Condominium Unit's foreclosure. (*Id.*) Defendant BPHOA did not file a lien or institute foreclosure proceedings against other owners with higher delinquent balances. (*Id.*) The Board sent a letter to all owners implying that Plaintiff had sued Defendant BPHOA, and that a special assessment of approximately $34,000 against the owners was necessary to fund Defendant BPHOA's defense in that lawsuit. (*Id.*)

In 2015, Ms. Hosseinzadeh transferred ownership of the Condominium Unit to Flex Corporation, of which Plaintiff is the sole owner. (*Id.* at 2.) In 2016, Plaintiff alleges that he and other owners were elected to the Board, but other incumbent Board members argued that this election was invalid. (*Id.* at 6–7.) The ultimate result was two groups of owners—Plaintiff and his group versus the incumbent Board members—fighting over which group was the legitimate Board. (*Id.*) A state court has determined that the valid Board was the group of owners that did *not* include Plaintiff; the valid Board included Defendants Teague and Gonzales. (Dkt. Nos. 1 at 6–7, 18-1 at 147.)

Nevertheless, the group of owners that Plaintiff alleged was the legitimate board included Plaintiff and two Chinese members. (Dkt. No. 1 at 7.) In January 2017, Board member Marlene Newman stated in an email to another owner that "[p]retty soon they will have to change the name from Bellevue Park to Hong Kon [sic] Gardens." (*Id.*) (second alteration in original). Board member Edmonds stated in an email to Defendant Teague "[w]e will do like many of the new Asian owners, keep the money and when foreclosure is threated [sic] pay. . . . I feel that since I live in ChinaMedina, it doesn't surprise me to see all the Chinese in [Bellevue Park]." (*Id.*) (third alteration in original). In October 2017, in an email to Defendant Gonzales and others, Defendant Teague wrote: "[f]ortunately all 18 affected homeowners have English names

except Xiao, and she will comprehend the writing." (*Id.*)

There was a small period of time in which Plaintiff was a legitimate Board member. (*See* Dkt. Nos. 1 at 6, 18-1 at 147.) Plaintiff contends that, during that time, he conducted valid, Board-related affairs. (Dkt. No. 1 at 6–8.) This conduct included going to two different banks to become a signer on Defendant BPHOA's accounts. (*Id.* at 7–8.) Plaintiff was able to become a signer on a Wells Fargo bank account, but he was unable to do so at U.S. Bank. (*Id.*) Defendant Teague was notified about Plaintiff's conduct and in January 2017, Defendant Teague sent an email to Bellevue Park owners that included the statement: "Here is The Good, the Bad, and The Ugly." (*Id.* at 8.) Under "The Ugly," Defendant Teague wrote:

> During one of the invalid board meetings, a member was nominated president and has attempted to defraud US Bank by requesting that the association[']s operational funds be transferred out. While I am not an attorney, these attempts to move the associations money is tantamount to criminal activity and they have not been honored by the bank . . . .

(*Id.*) (alteration in original). In February 2017, Defendant Gonzales sent an email to U.S. Bank's vice president, stating the following about Plaintiff:

> As I mentioned, a homeowner (actually, he is not even a homeowner-he is a representative for a homeowner) has spent the last 6 months or so trying to obtain access to the [BP]HOA funds, and was successful at this at Wells Fargo. . . . Our accounts at US Bank are frozen and our other accounts gone. We have no idea why the account is frozen. We have past due bills and no way to pay them. . . . I must say, though, this is a very urgent matter for us. We have already lost a lot of money and the longer we don't pay bills, the more fees we incur . . . .

(*Id.* at 8–9.)

In July 2017, Ms. Ovadia told Plaintiff's tenant that Plaintiff had stolen Defendant BPHOA's money. (*Id.* at 9.) In addition to the aforementioned, Plaintiff alleges that he and his family have faced continuous discrimination at Bellevue Park. (*Id.* at 6, 9–10.) Specifically, he alleges that the Condominium Unit was targeted for video surveillance by Defendant BPHOA; rules have been selectively enforced against Plaintiff and his family, while other residents are allowed repeated and egregious violations of the rules; Ms. Ovadia watered plants on behalf of

the Board, but refused to water Plaintiff's plants; Ms. Ovadia told other owners that Plaintiff's parking space belonged to anyone; Plaintiff's next door neighbor threatened him; and residents made unfounded complaints about Plaintiff and his family. (*Id.* at 6.)

In September 2018, Plaintiff filed suit against Defendants BPHOA, Teague, and Gonzales. (*Id.* at 1.) He alleges that Defendants are liable for common law claims of defamation and false light; violation of the federal Fair Housing Act (FHA), 42 U.S.C. §§ 3604(a), 3604(b), 3617; violation of the federal Civil Rights Act, 42 U.S.C. § 1982; violation of the Washington Law Against Discrimination (WLAD), Wash. Rev. Code §§ 49.60.010–49.60.510; and violation of the Washington Consumer Protection Act (CPA), Wash. Rev. Code §§ 19.86.010–19.86.920. (*Id.* at 10–16.) Defendants now move to dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted. (Dkt. No. 18.)

## II. DISCUSSION

### A. Judicial Notice

Defendants ask the Court to take judicial notice of several documents. (Dkt. Nos. 18 at 7–9, 18-1.) Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of relevant facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). A district court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). A court may take judicial notice of another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (citing *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). Facts subject to judicial notice may be considered in resolving a motion to dismiss. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

Defendants ask the Court to take judicial notice of the following state court documents: (1) the Washington appellate court opinion in *Bellevue Park Homeowners Ass'n v. Hosseinzadeh*, 2017 WL 2929509 (Wash. Ct. App. 2017); (2) an interpleader complaint, *U.S.*

*Bank Nat'l Ass'n v. Bellevue Park Homeowners Ass'n, et al.*, Case No. 17-2-06928-1SEA (Wash. Super. Ct. 2017) ("the Interpleader Complaint"); (3) Defendants BPHOA and Teague's answer to the Interpleader Complaint, their cross-claims, and their third-party complaint, Case No. 17-2-06928-1SEA (Wash. Super. Ct. 2017) ("Defendants' Cross-Claim"); (4) Plaintiff's answer to Defendant Teague's cross-claim and cross-claim against Defendant Teague for libel, Case No. 17-2-06928-1SEA (Wash. Super. Ct. 2017) ("Plaintiff's Cross-Claim"); (5) Defendant BPHOA's motion for summary judgment, Case No. 17-2-06928-1SEA (Wash. Super. Ct. 2017) ("Defendant BPHOA's Motion for Summary Judgment"); (6) Plaintiff's declaration in opposition to Defendant BPHOA's Motion for Summary Judgment; (7) the King County Superior Court's order denying Defendant Teague's motion for summary judgment (which is not included with the judicially-noticeable information) and granting Defendant BPHOA's Motion for Summary Judgment (the "Order on Summary Judgment"). (Dkt. No. 18-1.)

Plaintiff does not substantively oppose Defendants' request for the Court to take judicial notice of the above-mentioned documents. (*See* Dkt. No. 29 at 2–4.) Instead, Plaintiff disputes *how* the Court should use the information, (*id.*), which the Court addresses below. *See* Section II.C–D. The Court will take judicial notice of the documents, not for the truth of the facts within them, but for the fact that state courts have already decided some issues related to those now before the Court. The Court GRANTS Defendants' request for judicial notice of the appendices (Dkt. No. 18-1), but DENIES Defendants' request to take judicial notice of any specific facts within the documents.

### B. Federal Rule of Civil Procedure 12(b)(6)

The Court may dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. *Id.* at 678.

A plaintiff is obligated to provide grounds for his or her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### C. Defamation

Plaintiff argues that Defendants made the following defamatory statements: (1) Plaintiff attempted to commit bank fraud, (2) Plaintiff's attempts were "tantamount to criminal activity"; and (3) Defendant BPHOA "lost a lot of money" because of Plaintiff's actions. (Dkt. Nos. 1 at 8–11, 29 at 3.) Defendants argue that: (1) the alleged defamatory statements are nonactionable statements of opinion; and (2) Plaintiff has not established the falsity element because the alleged defamatory statements are substantially true, as previously determined by state courts. Therefore, Defendants argue that *res judicata* and collateral estoppel bar Plaintiff from asserting the falsity of the alleged defamatory statements. (*See* Dkt. No. 18 at 10–15.)

In order to state a claim for defamation under Washington law, a plaintiff must prove four elements: falsity, an unprivileged communication, fault, and damages. *Mark v. Seattle Times*, 635 P.2d 1081, 1088 (Wash. 1981). "To establish the falsity element, the plaintiff must show the challenged statement was 'provably false.'" *Phillips v. World Publ'g Co.*, Case No. C11-0558-RSM, Dkt. No. 34 at 4 (W.D. Wash. 2011) (citing *Schmalenberg v. Tacoma News, Inc.*, 943 P.2d 350, 357 (Wash. Ct. App. 1997)). If the gist of the story, or "the portion that carries the 'sting,'" is true, then the falsity prong cannot be met. *Mohr v. Grant*, 108 P.3d 768, 775 (Wash. 2005) (citing *Mark*, 635 P.2d at 1092). In other words, courts "require plaintiffs to show that the false statements caused harm distinct from the harm caused by the true portions of a communication." *Id.*

1. Statements of opinion

Statements of opinion are protected by the First Amendment and thus are nonactionable. *Robel v. Roundup Corp.*, 59 P.3d 611, 621 (Wash. 2002). A statement may be "provably false," and thus not a statement of opinion, if "it expresses or implies provable facts, regardless of whether the statement is, in form, a statement of fact or a statement of opinion." *Valdez-Zontek v. Eastmont Sch. Dist.*, 225 P.3d 339, 345 (Wash. Ct. App. 2010).

Defendants argue that Defendant Teague's statement that Plaintiff's conduct was "tantamount to criminal activity" cannot be defamation because it is a statement of opinion. (Dkt. No. 18 at 14–15.) Read alone, Defendant Teague's use of "tantamount to" may turn what would otherwise be a potentially defamatory statement into a statement of opinion because "tantamount" is a way that one indicates that, although some conduct is not "criminal activity," it is the same in the speaker's eyes. However, Defendant Teague made this statement in the context of describing Plaintiff's conduct as an "attempt[] to defraud US Bank." (Dkt. No. 1 at 8.) Even though "tantamount," on its own, may indicate an opinion, its use here expresses or implies provable facts—Defendant Teague used the term when describing Plaintiff's alleged provable criminal activity. *See Valdez-Zontek*, 225 P.3d at 345. Because it is reasonable to infer that the allegedly defamatory statement is not a statement of opinion, Defendants' motion to dismiss on this ground is DENIED.

2. *Res judicata*

"Filing two separate lawsuits based on the same event—claim splitting—is precluded in Washington." *Ensley v. Pitcher*, 222 P.3d 99, 102 (Wash. Ct. App. 2009) (citing *Landry v. Luscher*, 976 P.2d 1274, 1276 (Wash. Ct. App. 1999)). Application of *res judicata* under Washington law requires identity between a prior judgment and a subsequent action as to: (1) persons and parties; (2) causes of action; (3) subject matter; and (4) the quality of persons for or

against whom the claim is made.[1] *Karlberg v. Otten*, 280 P.3d 1123, 1130 (Wash. Ct. App. 2012). *Res judicata* also requires a final judgment on the merits. *Id.* Once the party asserting *res judicata* has met its burden of establishing these four elements, all matters that were considered, or could have been considered, in the prior action are barred. *See, e.g.*, *In re Marriage of Dicus*, 40 P.3d 1185, 1190 (Wash. Ct. App. 2002).

*Res judicata* does not bar Plaintiff's defamation claim because there is neither the same causes of action nor the same subject matter between the prior state court litigation and the present litigation. Plaintiff's Cross-Claim raised a libel cause of action against Defendant Teague in state court. (Dkt. No. 18-1 at 80–81.) However, there was no final judgment on that cause of action. (*See* Dkt. Nos. 18 at 8 n.3, 18-1 at 143–49.) Rather, only Defendant BPHOA's Motion for Summary Judgment, which sought declaratory relief about the validity of the Board and its members, was fully litigated. (*Id.*) Defendant BPHOA's Motion for Summary Judgment, and the Order on Summary Judgment, did not address Plaintiff's libel claim, which would bar Plaintiff's defamation claim here. (*See id.* at 103–27, 143–49.)

With regard to the subject matter for that fully litigated cause of action, the state court did not find that Plaintiff attempted to commit bank fraud, that his conduct was tantamount to criminal activity, or that Defendant BPHOA lost a lot of money because of Plaintiff's actions. (*See* Dkt. No. 18-1.) Those are statements that are distinct from the cause of action previously litigated; the truth of those statements is not necessary to determine whether Plaintiff's actions as a Board member were valid. (*See id.*) Thus, no court has found that the alleged defamatory statements are true or substantially true and therefore, *res judicata* does not bar Plaintiff's claims. Defendants' motion to dismiss Plaintiff's defamation claim on *res judicata* grounds is DENIED.

//

---

[1] The Court looks to the law of the forum state to determine the preclusive effect of a state court judgment. *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005).

3. <u>Collateral estoppel</u>

The party asserting collateral estoppel must show: (1) the issue decided in the prior action was identical to the issue in the present action; (2) a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior action; and (4) application of the doctrine would not work an injustice. *State v. Vasquez*, 59 P.3d 648, 650 (Wash. 2002). Defendants fail to establish the first element. As discussed above, the issues fully litigated in the prior state court proceeding are not the same as those in this proceeding. *See* Section II.C.2. Defendants' motion to dismiss Plaintiff's defamation claim on collateral estoppel grounds is DENIED.

**D.     False Light**

Under Washington law, a plaintiff states a false light claim when someone publicizes a matter that places another in a false light if: (1) "the false light would be highly offensive to a reasonable person"; and (2) "the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed." *Corey v. Pierce Cty.*, 225 P.3d 367, 373 (Wash. Ct. App. 2010) (citing *Eastwood v. Cascade Broad. Co.*, 722 P.2d 1295, 1297 (Wash. 1986)). Defendants make the exact same falsity argument, premised on *res judicata* and collateral estoppel, that they make in their motion to dismiss Plaintiff's defamation claim. (*See* Dkt. No. 18 at 15–16.) For the reasons discussed above, *see* Sections II.C.2–3, Defendants' motion to dismiss Plaintiff's false light claim is DENIED.

**E.     Fair Housing Act**

The FHA makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, . . . religion, . . . or national origin." 42 U.S.C. § 3604(a). The FHA also proscribes discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, . . . religion, . . . or national origin." 42 U.S.C. § 3604(b). Defendant

BPHOA need not sell or rent the condominium units in order to be liable under the FHA because the FHA makes it unlawful to "otherwise make unavailable or deny" housing, and to discriminate in the provision of services in connection with the sale or rental of housing. *See* 42 U.S.C. § 3604(a)–(b). Defendants' motion to dismiss Plaintiff's FHA claim on the ground that Defendant BPHOA does not rent or sell condominium units is DENIED.

Defendants argue that Plaintiff does not have standing to pursue an FHA claim because: (1) he does not own the Condominium Unit; and (2) because he has no legally-cognizable right. (Dkt. No. 18 at 16–17.) However, "[t]he Supreme Court has long held that claims brought under the Fair Housing Act are to be judged under a very liberal standing requirement. . . . [A]ny person harmed by discrimination, whether or not the target of the discrimination, can sue to recover for his or her own injury." *Harris v. Itzhaki*, 188 F.3d 1043, 1049–50 (9th Cir. 1999). Plaintiff is not the technical owner of the Condominium Unit; Flex Corporation, of which Plaintiff is the sole owner, owns the Condominium Unit. (Dkt. No. 1 at 2.) But, Plaintiff alleges that Defendants discriminated against Plaintiff through conduct aimed directly at him. (*See id.* at 3–10, 12–14.) The technical ownership of the Condominium Unit is irrelevant if Defendants treat Plaintiff as the owner, which Plaintiff sufficiently alleges that they do. (*See id.*); *Harris*, 188 F.3d at 1049–50. Plaintiff alleges that he suffers injury because of this discrimination. (*Id.* at 13.) Under the FHA's liberal standing requirement, these allegations are sufficient.[2] Defendants' motion to dismiss Plaintiff's FHA claim on the ground that he lacks standing to pursue that claim is DENIED.

FHA claims must be brought "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Although

---

[2] In the same vein, Defendants argue that Plaintiff cannot make out a disparate treatment claim because he has no legally-cognizable right that is being impaired. (*See* Dkt. Nos. 18 at 17, 31 at 4–5.) But Plaintiff has an ownership interest in the Condominium Unit through his sole ownership of Flex Corporation. (Dkt. No. 1 at 2.) Further, Plaintiff alleges that he has suffered injury as a result of Defendants' discriminatory treatment of Plaintiff. (*Id.* at 13.) Defendants' motion to dismiss Plaintiff's disparate treatment claim is DENIED.

claims that a defendant engaged in a continuous course of discriminatory conduct may allow a plaintiff to recover for damages that precede the limitations period, *see, e.g.*, *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 265 (7th Cir. 1996), "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *See Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (citing *Collins v. United Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir. 1975)).

The lien and foreclosure proceedings against the Condominium Unit were initiated in November 2014. (Dkt. No. 1 at 12.) This lawsuit was filed in 2018. (*Id.* at 17.) The ongoing foreclosure proceedings are the "continual ill effects from an original violation"—the discriminatory imposition of the lien. Therefore, Plaintiff's FHA claims related to the lien and the foreclosure proceedings are time-barred. Defendants' motion to dismiss Plaintiff's FHA claims, with regard to the lien and foreclosure proceedings, is GRANTED.

However, Plaintiff also complains of other allegedly discriminatory conduct that may not be time-barred. (*See* Dkt. No. 1.) For example, Plaintiff alleges that his unit was targeted for video surveillance by Defendant BPHOA, and that rules were selectively enforced against Plaintiff while others were allowed to repeatedly and egregiously violate the rules. (*Id.* at 6.) Taking Plaintiff's allegations as true, this conduct may qualify as unlawful activity under the FHA. Defendants' motion to dismiss is DENIED as to Plaintiff's timely FHA allegations.

### F. Civil Rights Act

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Defendants argue that Plaintiff cannot bring a § 1982 claim because he cannot establish a *prima facie* case of racial discrimination, as articulated by *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir. 1980). (Dkt. Nos. 18 at 17–18, 31 at 5–6.) Specifically, Defendants argue that Plaintiff cannot show that he applied for housing, was rejected, and that the housing remained available. (*See* Dkt. No. 31 at 5–6); *Phiffer*,

648 F.2d at 551. But discrimination strictly in the *sale or rental* of housing is not the only way for Plaintiff to plead a § 1982 claim. *See, e.g.*, *City of Memphis v. Greene*, 451 U.S. 100, 120–23 (1981) (holding that an impairment of property interests, even if not strictly in the sale or rental of housing, violates § 1982). Plaintiff has alleged that Defendants have interfered with his right to hold property, in violation of 42 U.S.C. § 1982. (Dkt. No. 1 at 5.) Defendants' motion to dismiss Plaintiff's § 1982 claim because there is no sale or rental of property at issue is DENIED.

### G. Washington Law Against Discrimination

Washington law prohibits discrimination in "any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." Wash. Rev. Code § 49.60.030(1)(b). Additionally, in Washington, it is unlawful to discriminate based on race or national origin in the course of real estate transactions. Wash. Rev. Code § 49.60.030(1)(c). Defendants make two challenges to Plaintiff's WLAD claim: (1) Defendant BPHOA is not a "public accommodation," under the WLAD; and (2) because Plaintiff does not own the Condominium Unit, he has not been the subject of discrimination with respect to a real estate transaction. (*See* Dkt. No. 18 at 18–22.)

#### 1. Public accommodation

This Court has explained how the WLAD sets forth six factors to help determine whether something is a public accommodation.[3] *Apilado v. N. Am. Gay Amateur Athletic All.*, Case No. C10-0682-JCC, Dkt. No. 69 at 6–7 (W.D. Wash. 2011). However, the statute itself indicates that what constitutes a place of public accommodation is not limited to those factors. *See* Wash. Rev. Code § 49.60.040(2) ("'Any place of public resort, accommodation, assemblage, or amusement' includes, *but is not limited to*, [the six *Apilado* factors.]") (emphasis added). Further, what

---

[3] These factors are whether the entity: (1) charges for admission, (2) accommodates those seeking recreation, (3) sells goods and merchandise, (4) operates where food or beverages of any kind are sold for consumption on the premises, (5) offers sports and recreation activities, and (6) operates where the public gathers for amusement or recreation.

constitutes a place of public accommodation "is appropriately a question of fact for the trier of fact," which is not properly determined at the motion to dismiss stage. *See Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1329 (Wash. 1996). Therefore, Defendants' motion to dismiss Plaintiff's WLAD claim because Defendant BPHOA is not a public accommodation is DENIED.

### 2. Real Estate Transactions

In Washington, it is unlawful to discriminate in the course of imposing a lien on real property. Wash. Rev. Code § 49.60.222(1)(j). Further, it is unlawful "[t]o discriminate against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith." Wash. Rev. Code § 49.60.222(1)(b). If discriminatory interference with the ownership of property affects a plaintiff's use and enjoyment of the property, that interference could violate the WLAD. *See Tafoya v. State Human Rights Comm'n*, 311 P.3d 70, 76 (Wash. Ct. App. 2013).

As discussed above, Flex Corporation, of which Plaintiff is the sole owner, owns the Condominium Unit. The actual ownership of the Condominium Unit is irrelevant if Defendants treat Plaintiff as if he is the owner. Plaintiff alleges that Defendants continue a discriminatory foreclosure process and engage in other discriminatory behavior directed toward Plaintiff. It is reasonable to infer that this conduct would affect Plaintiff's use and enjoyment of the property. Therefore, Defendants' motion to dismiss Plaintiff's WLAD claim because he is not an owner is DENIED.

### H. Washington Consumer Protection Act

To plead a plausible CPA claim, a plaintiff must allege facts that satisfy the following elements: "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). "A per se unfair trade practice exists when a statute that has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce has been violated."

*Merriman v. Am. Guarantee & Liab. Ins. Co.*, 396 P.3d 351, 367 (Wash. Ct. App. 2017). Violation of the WLAD in the course of trade or commerce, as defined in the CPA, is a *per se* CPA violation. Wash. Rev. Code § 49.60.030(3). The CPA defines "trade or commerce" as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington." Wash. Rev. Code § 19.86.010(2).

Defendants argue that they cannot be liable under the CPA because they do not engage in the sale of assets or services. (Dkt. No. 18 at 22–23.) However, although Defendants do not sell condominium units, Plaintiff has alleged that Defendants have assessed fees, instituted liens, and foreclosed on property. (Dkt. No. 1 at 4–5.) This conduct could be commerce that directly or indirectly affects the people of Washington. Defendants further argue that because Plaintiff does not own the Condominium Unit, he cannot bring a CPA claim. (Dkt. No. 18 at 22–23.) But "there is no language in the Washington [CPA] which requires that a CPA plaintiff be the consumer of goods or services." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1061 (Wash. 1993). As long as Defendants' conduct caused harm to Plaintiff's business or property, he could have a viable CPA claim, regardless of the fact that Flex Corporation is the technical "consumer." *See id.* Therefore, Defendants' motion to dismiss Plaintiff's CPA claim is DENIED.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 18) is GRANTED in part and DENIED in part. Specifically, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's time-barred FHA claim; it is DENIED with respect to the rest of Defendants' grounds for dismissal.

//

//

//

//

1       DATED this 26th day of March 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE