THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABOLFAZL HOSSEINZADEH, | CASE NO. C18-1385-JCC |
| Plaintiff, | ORDER |
| v. | |
| BELLEVUE PARK HOMEOWNERS ASSOCIATION *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendant Jennifer Gonzalez's motion for summary judgment (Dkt. No. 45). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

I.     **BACKGROUND**[1]

---

[1] Much of the factual statements in the parties' briefs are not properly supported by affidavits based on personal knowledge or other similar evidence that is ordinarily considered at summary judgment. *See* Fed. R. Civ. P. 56(c); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion . . . the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts' . . . ."); (Dkt. Nos. 45 at 2, 47 at 6) (citing to the complaint as evidence). However, because both parties fail to properly support their factual assertions and those assertions appear undisputed, the court will consider those facts undisputed for the purposes of ruling on Plaintiff's motion, unless otherwise noted. *See* Fed. R. Civ. P. 56(e)(2).

1    In 2002, Plaintiff Abolfazl Hosseinzadeh purchased a condominium unit at Bellevue
2    Park, which is managed by Defendant Bellevue Park Homeowners Association (the
3    "Association"), a nonprofit corporation whose membership is composed of the owners of
4    condominium units at Bellevue Park. (Dkt. No. 1 at 2–3.) In 2015, Hosseinzadeh transferred
5    ownership of his condominium to Flex Corporation, a company that Hosseinzadeh fully owns.
6    (*Id.* at 2.) On March 29, 2016, Hosseinzadeh was elected to the Association's Board of Directors
7    at a regular annual meeting. (*Id.* at 6.)

8    Through the end of 2016, Hosseinzadeh appeared to validly sit on the board. (*See id.* at 8;
9    Dkt. No. 46 at 90–92.) But on January 7, 2017, Hosseinzadeh held a special meeting of the board
10   at which Zheng Tang, an associate of Hosseinzadeh, was elected to the board and Hosseinzadeh
11   was elected president. (*See* Dkt. No. 46 at 88.) The validity of those elections were disputed by
12   other Association members, who called for a special homeowners meeting. (*See id.* at 84–85.)
13   The special meeting was held on January 31, 2017, and a new board was elected. (*See id.* at 87.)
14   The new board did not include Hosseinzadeh or Tang. (*See id.*) It did include Defendant Jennifer
15   Gonzalez. (Dkt. No. 1 at 3.)

16   While this fight for control over the board was ongoing, Hosseinzadeh and Tang went to
17   Wells Fargo Bank on January 12, 2017, and successfully added themselves as signatories on the
18   accounts that the Association held at the bank. (Dkt. No. at 48 at 63.) According to
19   Hosseinzadeh, he and Tang "decided not to touch [the money] because we were challenged."
20   (*Id.*) That same day, Hosseinzadeh reached out to U.S. Bank and tried to add himself as a
21   signatory on the Association's account at the bank. (*Id.* at 64–65.) U.S. Bank did not add
22   Hosseinzadeh as a signatory on the account, and over the next few days, the bank received
23   conflicting communications about who had authority to control the account's funds. (Dkt. No. 1
24   at 8, 46 at 27–30.) These conflicting communications prompted U.S. Bank to place a hold on the
25   funds in BPHOA's account at the bank. (*See* Dkt. No. 46 at 25–31.)

26   On February 2, 2017, Gonzalez sent an email to the Vice President at U.S. Bank in an

effort to unfreeze the Association's account. (*Id.* at 115.) Gonzalez wrote,

> As I mentioned, a homeowner (actually, he is not even a homeowner-he is a representative for a homeowner) has spent the last 6 months or so trying to obtain access to the . . . HOA funds, and was successful at this at Wells Fargo.
>
> We have followed all of the HOA by-laws to create a new, valid board.
>
> Our accounts at US Bank are frozen and our other accounts gone. We have no idea *why* the account is frozen. We have past due bills and no way to pay them. We have no way to collect HOA dues. This is a continuing nightmare for many people.
>
> What documentation is need[ed] to restore our account and keep Ab and his cohorts from taking our funds? I can have our HOA attorney contact you and provide you with any documentation you require.
>
> I must say, though, this is a VERY urgent matter for us. We have already lost a lot of money and the longer we don't pay bills, the more fees we incur.

(*Id.*) Later that day, Gonzalez emailed two Association members, Defendant Adrian Teague and Marlene Newman, about Gonzalez's communications with U.S. Bank's Vice President. (*Id.* at 122.) The email stated,

> [The Vice President at U.S. Bank] told me there was a flurry of emails from Ab to her today. I let her know that he fraudulently obtained our WF funds and that we would rather the accounts remain frozen than for her to release any funds to him. She was supposed to review what was going on and get back to me, but she did not.
>
> . . .
>
> Ab is making moves, so we need to be as aggressive and on top of it as he is.

(*Id.*)

On September 19, 2018, Hosseinzadeh filed a complaint against Gonzalez, Teague, and the Association. (Dkt. No. 1.) The complaint alleges, among other things, that Gonzalez defamed Hosseinzadeh. (Dkt. No. 1 at 10–11.) Gonzalez now moves for summary judgment on the defamation claim against her, arguing that the statements she made in the two emails on February 2, 2017, were true. (Dkt. No. 45 at 5–8.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, the court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255. The court is therefore prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

"The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." [2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving party properly supports its motion, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Defamation Claim Against Gonzalez

To state a claim for defamation under Washington law, a plaintiff must prove four elements: falsity, an unprivileged communication, fault, and damages. *Mark v. Seattle Times*,

---

[2] Gonzalez argues that Hosseinzadeh has a heightened burden at summary judgment because he "must prove defamation by an evidentiary standard of **convincing clarity**." (Dkt. No. 45 at 6) (emphasis in original) (citing *Mark v. Seattle Times*, 635 P.2d 1081, 1088 (Wash. 1981)). However, the convincing clarity standard does not apply to "a nonmedia defendant sued for a statement about private affairs." *Dunlap v. Wayne*, 716 P.2d 842, 846 (Wash. 1986). Thus, the "usual rules governing summary judgment . . . control" in this case. *Id.*

635 P.2d 1081, 1088 (Wash. 1981). "To establish the falsity element, the plaintiff must show the challenged statement was 'provably false.'" *Phillips v. World Publ'g Co.*, Case No. C11-0558-RSM, Dkt. No. 34 at 4 (W.D. Wash. 2011) (citing *Schmalenberg v. Tacoma News, Inc.*, 943 P.2d 350, 357 (Wash. Ct. App. 1997)). "A provably false statement is one that, as either a statement of fact or opinion, falsely expresses or implies provable facts about the plaintiff." *Seaquist v. Caldier*, 438 P.3d 606, 612 (Wash. Ct. App. 2019). Thus, "it is not necessary that the accusation or other statement be by words. It is enough that the communication is reasonably capable of being understood as charging something defamatory." Restatement (Second) of Torts § 565 cmt. B (Am. Law Inst. 1977). However, if the gist of the story—"the portion that carries the 'sting'"—is true, then the falsity prong cannot be met. *Mohr v. Grant*, 108 P.3d 768, 775 (Wash. 2005) (citing *Mark*, 635 P.2d at 1092).

Here, a reasonable jury could conclude that Gonzalez's emails on February 2, 2017, implied that Hosseinzadeh had taken funds from the Association's bank account at Wells Fargo. Gonzalez's email to the Vice President of U.S. Bank begins by saying that Hosseinzadeh "obtain[ed] access to the . . . HOA funds . . .at Wells Fargo." (Dkt. No. 46 at 115.) The email then says that the account at Wells Fargo is "gone," that the Association has "lost a lot of money already," and that the Association needs to find a way to "keep Ab and his cohorts from taking [the Association's] funds" at U.S. bank. (*See id.*) The implication of the email is relatively straightforward: Hosseinzadeh took the Association's money at Wells Fargo, and now he is coming for the Association's money at U.S. Bank. That implication is similarly present in Gonzalez's email to Teague and Newman. (*See id.* at 122) (stating that Hosseinzadeh "fraudulently obtained our [Wells Fargo] funds and that we would rather the accounts remain frozen [at U.S. bank] than for [the bank] to release any funds to him").

Gonzalez reads her emails differently, arguing that she stated "merely that Plaintiff had been successful at *adding* himself to the Wells Fargo . . . account and asked how Plaintiff could be kept from *obtaining access* to the funds at U.S. Bank." (Dkt. No. 45 at 7) (emphasis added).

This is a possible reading of Gonzalez's email. A reasonable jury could conclude, for example, that when Gonzalez told Teague and Newman that Hosseinzadeh had "obtained our [Wells Fargo] funds," Gonzalez really meant that Hosseinzadeh had obtained access to those funds. (*See* Dkt. No. 46 at 122.) Similarly, a reasonable jury could conclude that when Gonzalez said that the Association's "account [is] gone" and that the Association had "already lost a lot of money," she meant that Gonzalez had gained control over the Wells Fargo account by adding himself as a signatory on the account. (*See id.* at 115.) But a reasonable jury could also conclude that the Association had "lost a lot of money" and the Wells Fargo account was "gone" because Hosseinzadeh had withdrawn money from that account.

A reasonable jury could further conclude that Hosseinzadeh never withdrew money from the Wells Fargo account. In his deposition, Hosseinzadeh states that he never withdrew money from the account, (Dkt. No. at 48 at 63), and Gonzalez does not argue otherwise at summary judgment, (*see generally* Dkt. No. 45, 49). Accordingly, summary judgment is inappropriate because a genuine dispute of material fact exists as to whether Gonzalez made false statements in the two emails she sent on February 2, 2017.[3]

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Gonzalez's motion for summary judgment (Dkt. No. 45).

//
//
//
//

---

[3] Because Hosseinzadeh presents sufficient evidence to create a genuine dispute of fact regarding the issue of falsity, the Court need not consider Hosseinzadeh's request to defer considering Gonzalez's motion under Federal Rule of Civil Procedure 56(d). (*See* Dkt. No. 47 at 10–14.) Likewise, the Court need not consider whether Hosseinzadeh's signature authority over the Wells Fargo account was valid because even if it was invalid, a reasonable jury could conclude that Gonzalez falsely accused Hosseinzadeh of withdrawing money from the account.

DATED this 9th day of June 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C18-1385-JCC
PAGE - 7