THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABOLFAZL HOSSEINZADEH,<br><br>Plaintiff,<br>v.<br><br>BELLEVUE PARK HOMEOWNERS ASSOCIATION *et al.*,<br><br>Defendants. | CASE NO. C18-1385-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Bellevue Park Homeowners Association's (the "Association") motion to modify third-party subpoenas (Dkt. No. 53) and Plaintiff's motions to compel compliance with subpoenas for the production of documents (Dkt. Nos. 66–68). Having considered the parties' briefing[1] and the relevant record, the Court hereby DENIES the Association's motion and DENIES Plaintiff's motions for the reasons explained herein.

## I. BACKGROUND

In 2002, Plaintiff purchased a condominium unit at Bellevue Park, which is managed by the Association. (Dkt. No. 1 at 3.) On September 19, 2018, Plaintiff filed suit against the

[1] The Court hereby GRANTS the Association's motion for leave to file an over-length brief (Dkt. No. 56). The Court will consider that brief in ruling on the Association's motion to modify third-party subpoenas.

Association, Adrian Teague, and Jennifer Gonzales. (*Id.*) Plaintiff alleges that Defendants defamed him and discriminated against him. (*See id.* at 3–10.)

On March 11, 2020, Plaintiff served subpoenas for documents on Pody & McDonald, PLLC, the Association's general counsel since 2012; MacPherson's Property Management, the Association's former property manager; Agynbyte LLC, the Association's current property manager; and PCAM Services, Inc., a company that works with Agynbyte to provide maintenance services for the Association. (Dkt. Nos. 54-1–54-3, 68-1 at 4–7.) Each subpoena has a similar structure: the subpoena asks for "all written communications" between the subpoenaed party's employees and various other persons or entities from a specified time (usually January 1, 2012) to the present. (*See, e.g.*, Dkt. No. 54-1 at 5.)

On March 19, 2020, the Association objected to the subpoenas issued to Pody & McDonald, Agynbyte, and MacPherson's in a letter sent to Plaintiff. (Dkt. No. 54-4 at 2.) The letter focused on the Association's concern that the subpoenas would force the subpoenaed entities to reveal privileged communications that the Association, Agynbyte, and MacPherson's had with Pody & McDonald. (*Id.* at 2–3.) Plaintiff responded to the letter by stating that the subpoenaed parties could not rely on a "blanket objection" to resist the subpoena and must instead produce privilege logs that describe the basis for withholding any privileged document. (Dkt. No. 54-5 at 2–6.)

On March 24, 2020, the Association and Plaintiff held a telephone call to discuss the subpoenas. (Dkt. No. 54-6 at 2.) The Association asked Plaintiff to modify the subpoenas by (1) limiting the subpoenas to "nonprivileged communications" and (2) limiting the requested communications to specific topics. (Dkt. No. 61-1 at 40–41.) Although Plaintiff declined to limit the subpoenas to nonprivileged communications, she offered to restrict the subpoenas to the 62 topics listed in Plaintiff's 30(b)(6) deposition notice. (*Id.*) Those topics were expansive, however, and Plaintiff had previously rejected the Association's request to limit or narrow their scope. (Dkt. No. 54-6 at 3.) The Association therefore refused Plaintiff's offer and moved to modify the

subpoenas. (*Id.*; Dkt. No. 53.)

During this same time, Plaintiff communicated through letters with the subpoenaed parties themselves. The subpoenaed parties expressed their concerns that the subpoenas were overbroad and sought privileged communications. (*See* Dkt. Nos. 73 at 2–5, 75 at 2–3.) The subpoenaed parties also requested more time to respond due to the COVID-19 pandemic. (*See id.*) Plaintiff agreed to extend the time for the subpoenaed parties to respond and offered to limit the scope of the subpoena to Pody & McDonald.[2] (*See* Dkt. Nos. 66-1 at 13–16, 67-1 at 13–17, 68-1 at 11.) Plaintiff also suggested that the subpoenaed parties set up a time to discuss their objections to the subpoenas. (*See, e.g.*, Dkt. No. 66-1 at 17.) When the subpoenaed parties did not specifically respond to Plaintiff's suggestion, Plaintiff moved to compel without following up or speaking with the subpoenaed parties over the phone. (*See* Dkt. No. 67 at 3–4.)

## II. DISCUSSION

### A. Facial Validity of the Subpoenas

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant information is "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Proportionality is a matter of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

One particular method of discovery is a subpoena for documents. *See* Fed. R. Civ. P. 45(a)(D). A subpoena for documents allows a party to obtain documents from a non-party to the

[2] Plaintiff did not offer to narrow the scope of the subpoena to Agynbyte or PCAM. (*See* Dkt. Nos. 66 at 13–16, 68-1 at 11–14.)

same extent that the party can obtain documents from another party under Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 45, Advisory Committee Note of 1991, subdivision (a). Thus, a party may use a subpoena for documents to obtain discovery regarding any matter that is relevant, proportional to the needs of the case, and nonprivileged. *See* Fed. R. Civ. P. 26(b), 34(a). If a subpoenaed party believes that a subpoena requires it to produce material that is irrelevant, disproportionate to the needs of the case, or privileged, then the subpoenaed party may move to quash or modify the subpoena. *See* Fed. R. Civ. P. 45(3)(A). A party may also move to quash or modify a subpoena directed to a non-party if the subpoena seeks the moving party's privileged information. *Eli Lily & Co. v. Teva Pharm. USA Inc.*, Case No. C17-0267-JSR, Dkt. No. 7 at 5 (W.D. Wash. 2017). The party seeking to quash or modify a subpoena bears the burden of showing that the subpoena should be quashed or modified. *See Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966).

As written, the subpoenas ask for a staggering amount of information. The subpoena to Pody & McDonald asks for "[a]ll written communications between any of your employees relating to the Bellevue Park Homeowners Association from January 1, 2009 to the present." (Dkt. No. 54-1 at 5.) The subpoena to Agynbyte asks for "[a]ll written communications between any of your employees . . . from January 1, 2017 to the present relating to Bellevue Park Homeowners Association." (Dkt. No. 54-3 at 5.) And the subpoena to PCAM asks for "[a]ll written communications between any of your employees relating to the Bellevue Park Homeowners Association from January 1, 2009 to the present." (Dkt. No. 68-1 at 7.) These are but examples of the subpoenas' requests.

By requesting all written communications regardless of their content or subject matter, Plaintiff ignored his responsibility to "avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1); *see Jenkins v. Miller*, 2019 WL 5561387, slip op. at 3 (D. Vt. 2019) (holding subpoena was overbroad because it asked for "all 'communications'" concerning certain individuals); *Williamson v. Recovery Ltd. P'ship*, 2016

WL 4920773, slip op. at 4 (S.D. Ohio 2016) (holding subpoena was overbroad because it asked for "all communications" between the subpoenaed party and the party's company without regard to subject matter). The subpoenas impose an undue burden on the subpoenaed parties because the subpoenas force those parties to spend hundreds of hours compiling and reviewing tens of thousands of documents. (*See* Dkt. No. 73 at 3, 75 at 4.)

Plaintiff does not meaningfully defend the subpoenas in their current form. (*See* Dkt. No. 61 at 6–7.) Instead, Plaintiff observes that he offered to somewhat limit the subpoenas' scope. (*See id.*) Yet, Plaintiff does not seek to enforce a limited version of the subpoenas; he moves to enforce the subpoenas as written. (*See, e.g.*, Dkt. No. 67 at 1.) Given that the subpoenas are overbroad as written, the Court DENIES Plaintiff's motions to compel.[3] The Court also declines to modify the subpoenas because the Court cannot modify the subpoenas without effectively rewriting them. *See Simplex Mfg. Co. v. Chien*, Case No. C12-0835-RAJ, Dkt. No. 19 at 5–6 (W.D. Wash. 2012) (declining to modify overly broad subpoenas). Accordingly, the Court DENIES the Association's motion to modify and instead QUASHES the subpoenas served on Pody & McDonald, MacPherson's, Agynbyte, and PCAM. (Dkt. Nos. 54-1–54-3, 68-1 at 4–7.)

**B. Meet-and-Confer Requirement**

The Court usually begins its discovery orders by reminding the parties that "[d]iscovery motions are strongly disfavored." *See, e.g., Williams v. Perdue*, Case No. C19-0444-JCC, Dkt. No. 23 at 2 (W.D. Wash. 2020). The Court begins with this reminder because in the great

---

[3] The Court does not reach the parties' arguments about attorney-client privilege because the subpoenas' breadth is reason enough for the Court to quash those subpoenas. However, the Court makes three observations for the future. First, the Federal Rules of Civil Procedure do not require discovery requests to specifically exclude nonprivileged communications; indeed, they typically require a responding party to assert the privilege in a privilege log. *See* Fed. R. Civ. P. 26(b)(5). Second, "[n]ot all communications between attorney and client are privileged." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Third, discovery requests on attorneys, like all discovery requests, must be relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Whether a discovery request is proportional may depend on the costs of generating an expansive privilege log.

majority of cases, discovery issues can be avoided if the parties do one simple thing: talk with one another in good faith. If parties talk in good faith but are still unable to resolve their dispute, the Court has no problem stepping in—the Court's role is to resolve disputes, after all. But when parties file discovery motions without talking in good faith, they risk engendering ill will and wasting the parties' and the Court's time.

In this case, the parties appear to have stopped talking about their discovery issues in good faith. If they were, they would not have filed 12 discovery-related motions, (Dkt. Nos. 53, 66–69, 80, 86–87, 92, 113, 132, 136), and the present discovery fight would have been avoided. That fight began when Plaintiff filed facially overbroad subpoenas asking for "all written communications" from various non-parties over an extended period. (*See* Dkt. Nos. 54-1–54-3, 68-1 at 4–7.) The subpoenaed parties and the Association reasonably objected to the scope of those subpoenas, (*see* Dkt. Nos. 54-4 at 2, 73 at 2–5, 75 at 2–3), and Plaintiff seemed willing to modify the subpoenas' scope to some extent, (*see* Dkt. No. 67-1 at 17). But the conversation between Plaintiff and the Association broke down, (*see* Dkt. Nos. 54-6 at 3–4, 61-1 at 40–41), and Plaintiff never spoke with the subpoenaed entities at all, (*see* Dkt. No. 67 at 3–4).

The parties' behavior appears to have complied with the letter of the Western District of Washington's Local Civil Rules. The Association complied with Local Civil Rule 26(c) by calling Plaintiff before filing its motion, (*see* Dkt. Nos. 54-6 at 3–4, 61-1 at 40–41), and Plaintiff may not have been required to meet and confer with the subpoenaed parties before filing his motions, *see Chandola v. Seattle Hous. Auth.*, Case No. C13-0557-RSM, Dkt. No. 101 at 12 (W.D. Wash. 2014) (concluding that the meet-and-confer requirement does not apply to motions made under Federal Rule of Civil Procedure Rule 45). But the parties did not make a serious effort to comply with the spirit of those rules. Although Plaintiff was willing to limit the subpoena to Pody & McDonald to 22 topics, (*see* Dkt. No. 67-1 at 17), he never communicated that offer to the Association, (*see* Dkt. No. 61-1 at 40–41). Similarly, Plaintiff asked the subpoenaed parties in a letter if they could discuss their objections over the phone, but he never

followed up on that request before filing his motion to compel. (*See* Dkt. Nos. 66-1 at 17, 67 at 3–4); *cf. Williams*, Case No. C19-0444-JCC, Dkt. No. 23 at 2–3 (concluding party did not attempt to meet and confer in good faith where the party failed to follow up on their letter requesting a conference).

Moving forward, the Court strongly encourages the parties to make every effort to resolve their discovery disputes before involving the Court. Failing to do so will expose the parties to sanctions.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the Association's motion for leave to file an over-length brief (Dkt. No. 56), DENIES the Association's motion to modify third-party subpoenas (Dkt. No. 53), and DENIES Plaintiff's motions to compel compliance with subpoenas for the production of documents (Dkt. Nos. 66–68). The Court QUASHES the subpoenas for documents that Plaintiff served on Pody & McDonald, MacPherson's, Agynbyte, and PCAM.

DATED this 17th day of June 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE