THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABOLFAZL HOSSEINZADEH, | CASE NO. C18-1385-JCC |
| Plaintiff, | ORDER |
| v. | |
| BELLEVUE PARK HOMEOWNERS ASSOCIATION *et al.*, | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion to stay proceedings (Dkt. No. 86) and his motion disqualify Helsell Fetterman, LLP (Dkt. No. 87). Having considered the parties' briefing and the relevant record, the Court hereby DENIES the motions for the reasons explained herein.

I.    BACKGROUND

Plaintiff and his family were born in Iran. (Dkt. No. 1 at 3.) In 2002, Plaintiff purchased a condominium at Bellevue Park, which is managed by Defendant Bellevue Park Homeowners Association (the "Association"). (*Id.* at 2–3.) Plaintiff alleges that since he purchased the condominium, the Association, its members, and its agents have harassed and targeted Plaintiff because of his and his family's race, religion, or national origin. (*See id.* at 3–10.) Three alleged instances of harassment appear relevant here.

First, Plaintiff alleges that he and his family were harassed in various ways after he installed a satellite dish so that his parents could watch Persian television. (*See id.* at 3–4, 6.) For example, Plaintiff claims that Rosemary Ovadia, an Association member, refused to water Plaintiff's plants and said that Plaintiff's parents should "learn English or go back to their country." (*See id.* at 4, 6.) Plaintiff further claims that MacPherson's Property Management removed the satellite shortly after Wilma Edmonds, the Association's former treasurer, retained MacPherson's as the Association's property manager. (*Id.* at 4.)

Second, Plaintiff alleges that the Association directed the law firm Pody & McDonald, PLLC to foreclose on his unit. (*Id.* at 4–5.) Although Plaintiff admits that his unit had an unpaid balance, he claims that the foreclosure action was discriminatory because the Association "did not file a lien or pursue foreclosure proceedings against other owners with higher delinquent balances." (*Id.* at 5.)

Third, Plaintiff alleges that several Association members, including Ovadia and Edmonds, "undertook a campaign to discredit, malign, and remove from leadership [Plaintiff] and those associated with him." (*Id.* at 6–7.) That campaign resulted in Plaintiff being removed from the Association's board of directors on January 31, 2017. (*See id.* at 3, 9.)

On September 19, 2018, Plaintiff filed a complaint against the Association, Adrian Teague, and Jennifer Gonzalez. (*Id.* at 3.) The complaint brings claims of defamation and false light; violation of the Fair Housing Act, 42 U.S.C. §§ 3604(a), 3604(b), 3617; violation of the Civil Rights Act, 42 U.S.C. § 1982; violation of the Washington Law Against Discrimination, Wash. Rev. Code §§ 49.60.010–49.60.510; and violation of the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010–19.86.920. (*Id.* at 10–16.) To defend against those claims, the Association retained Helsell Fetterman as its counsel. (Dkt. No. 9.)

On March 11, 2020, Plaintiff served subpoenas for documents on Pody & McDonald; Agynbyte LLC, which serves as the Association's current property manager; and PCAM Services, Inc., which works with Agynbyte to provide maintenance services for the Association.

(Dkt. Nos. 54–1, 54-3, 68-1 at 4–7.) Over the next month, those third-party entities communicated to Plaintiff's counsel their concerns that the subpoenas were overbroad. (*See* Dkt. No. 73 at 2–5, 75 at 2–3.) Plaintiff's counsel refused to materially narrow the subpoenas' scope, and she eventually moved to compel each entity to respond to the subpoenas. (*See* Dkt. No. 73 at 2–5, 75 at 2–3.) Each entity retained Helsell Fetterman to represent them in responding to Plaintiff's motions to compel. (Dkt. No. 73 at 4–5, 75 at 3–4.)

Around the same time Plaintiff issued the subpoenas for documents, Plaintiff also served subpoenas for depositions on Ovadia and Edmonds. (*See* Dkt. No. 88 at 114–30.) After being served, Ovadia and Edmonds retained Helsell Fetterman to represent them at their depositions. (Dkt. No. 111 at 2.)

Plaintiff now moves to disqualify Helsell Fetterman, claiming that "Helsell's choice to accept the representation of five (5) new clients in addition to its initial representation of [the Association] . . . creates multiple conflicts of interest." (Dkt. No. 87 at 3.) More specifically, Plaintiff argues that a conflict of interest exists because the alleged actions of Pody & McDonald, Agynbyte, PCAM, Ovadia, and Edmonds expose the Association to liability. (*See id.* at 5.)

**II.    DISCUSSION**

In general, "only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client." *Colyer v. Smith*, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999); *see also Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998). This general rule limits gamesmanship by preventing a nonclient from "us[in]g the conflict rules for his own purposes where a genuine conflict might not really exist."[1] *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 90 (5th Cir. 1976). The rule is subject to

---

[1] Some courts ground the rule in Article III standing. *See Colyer*, 50 F. Supp. 2d at 971. Other courts believe that Article III has no bearing on a motion to disqualify. *See Greenfield MHP Ass'ns, L.P. v. Ametek, Inc.*, 2018 WL 538961, slip op at 2–4 (S.D. Cal. 2018). While the Court doubts that Article III limits a court's power to consider a motion to disqualify, the Court still finds that the "standing" rule plays an important role in limiting gamesmanship. *See In re Yarn Processing*, 530 F.2d at 90.

exceptions, however. For example, if a nonclient brings attention to an "unethical change of sides [that is] manifest and glaring," then a court may have a "plain duty to act." *See FMC Techs., Inc. v. Edwards*, Case No. C05-0946-JCC, Dkt. No. 113 at 4 (W.D. Wash. 2006) (quoting *Yarn Processing*, 530 F.2d at 89). Similarly, a nonclient has standing to seek an attorney's disqualification where the attorney's "ethical breach so infects the litigation . . . that it impacts the moving party's interest in a just and lawful determination of her claims." *See id.* at 5 (quoting *Coyler*, 50 F. Supp. 2d at 971–72).

Here, Plaintiff seeks to disqualify Helsell Fetterman despite never having been Helsell Fetterman's client. (Dkt. No. 111 at 1–2.) Thus, Plaintiff cannot seek Helsell Fetterman's disqualification unless the alleged conflict of interest between Helsell Fetterman's clients is "manifest and glaring" or infectious to the litigation. *FMC Techs.*, Case No. C05-0946-JCC, Dkt. No. 113 at 4–5. To determine if the alleged conflict rises to that level, the Court looks to the Washington Rules of Professional Conduct. W.D. Wash Local Civ. R. 83.3(1)(2). Those rules generally prohibit an attorney from representing a client who has a concurrent conflict of interest with one of the attorney's other clients. *See* Wash. R. Prof'l Conduct 1.7. A concurrent conflict of interest exists if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Wash. R. Prof'l Conduct 1.7(a).

Any concurrent conflict of interest between Helsell Fetterman's clients is entirely speculative. It is, of course, possible the interests of those clients will eventually diverge. For instance, the Association might disavow Ovadia's allegedly racist gardening practices and argue that Ovadia chose not to water plants on her own accord. But that possibility is theoretical—"[i]t is just as likely that [the Association] and [Ovadia] will have mutually compatible defenses." *BeJaran v. Corizon Inc.*, 2017 WL 11429842, slip op. at 2 (D. Ariz. 2017) (concluding plaintiff lacked standing to object to counsel's representation of two defendants based on the mere possibility that the two defendants' interests would conflict), *adopted by*, 2018 WL 9619357 (D.

Ariz. 2018). Moreover, Ovadia—along with Helsell Fetterman's other allegedly conflicted clients—is not a party and faces no present liability; she has been asked only to respond to a subpoena. While responding to the subpoena could lead to a conflict with the Association, that possible conflict does not "so infect[] [this] litigation . . . that it impacts [Plaintiff's] interest in a just and lawful determination of [his] claims." *FMC Techs., Inc.*, Case No. C05-0946-JCC, Dkt. No. 113 at 5; *see Guillen v. City of Chicago*, 956 F. Supp. 1416, 1422–27 (N.D. Ill. 1997) (allowing attorney to represent two third-party witnesses at a deposition where the conflict between the witnesses and the attorney's other client, a defendant, was only speculative). Accordingly, Plaintiff has failed to establish a conflict so manifest and glaring or infectious to the litigation such that the Court has a plain duty to disqualify Helsell Fetterman. *See FMC Techs., Inc.*, Case No. C05-0946-JCC, Dkt. No. 113 at 4.

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to stay proceedings (Dkt. No. 86) and his motion to disqualify Helsell Fetterman (Dkt. No. 87).

DATED this 17th day of June 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE