THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABOLFAZL HOSSEINZADEH, | CASE NO. C18-1385-JCC |
| Plaintiff, | ORDER |
| v. | |
| BELLEVUE PARK HOMEOWNERS ASSOCIATION *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendant Bellevue Park Homeowner's Association's motion for a protective order (Dkt. No. 69) and Plaintiff's motion to compel (Dkt. No. 80). Having considered the parties' briefing and the relevant record, the Court hereby GRANTS the Association's motion, DENIES Plaintiff's motion, ORDERS Plaintiff's counsel to pay the Association's reasonable expenses incurred in filing its motion, and ORDERS Plaintiff's counsel to show cause why she should not be sanctioned for discovery violations.

I.      BACKGROUND

Plaintiff and his family were born in Iran. (Dkt. No. 1 at 3.) In 2002, Plaintiff purchased a condominium unit at Bellevue Park, which is managed by the Association. (*Id.* at 2–3.) Plaintiff alleges that since he purchased the condominium, the Association and several of its members have harassed and targeted Plaintiff because of his and his family's race, religion, or national

origin. (*See id.* at 3–10.)

On September 19, 2018, Plaintiff filed suit against the Association, Adrian Teague, and Jennifer Gonzalez. (*Id.* at 3.) Plaintiff brings claims of defamation and false light; violation of the Fair Housing Act, 42 U.S.C. §§ 3604(a), 3604(b), 3617; violation of the Civil Rights Act, 42 U.S.C. § 1982; violation of the Washington Law Against Discrimination, Wash. Rev. Code ch. 49.60; and violation of the Washington Consumer Protection Act, Wash. Rev. Code ch. 19.86. (*Id.* at 10–16.)

On October 29, 2019, Plaintiff's counsel asked the Association's counsel for dates when Plaintiff could depose a witness who could speak on the Association's behalf pursuant to Federal Rule of Civil Procedure 30(b)(6). (Dkt. No. 71-1 at 2–3.) On November 6, 2019, the Association's counsel responded that she could not provide dates until Plaintiff's counsel provided a list of topics that would be covered in the deposition. (*Id.* at 2.) Three and a half months later, Plaintiff's counsel replied with a list of 62 topics. (Dkt. No. 71-2 at 6–12.) Those topics included "[e]ach fact supporting all affirmative defenses in the Association's Answer to plaintiff's complaint"; "[t]he assessments collected by the Association on behalf of Bellevue Park"; "any communications, written or oral, between the Association and Roto-Rooter between January 1, 2011 and the present"; and other similarly broad areas of inquiry. (*See id.* at 6–7, 11.)

On March 10, 2020, Plaintiff's counsel and the Association's counsel held a conference to discuss various discovery issues, including Plaintiff's proposed Rule 30(b)(6) topics. (Dkt. No. 54–6 at 2–3.) The Association's counsel asked Plaintiff's counsel to limit or modify the number of topics and scope of Plaintiff's proposed topics. (*Id.* at 3.) Plaintiff's counsel refused to modify the topics. (*Id.*) The Association's counsel responded that if Plaintiff's counsel was unwilling to modify the topics, then the Association would likely move for a protective order. (*Id.*)

On April 10, 2020, the Association's counsel sent Plaintiff's counsel a letter further detailing the Association's objections to Plaintiff's proposed topics. (*See generally* Dkt. No. 71-3.) Many of these objections were generic, but some were specific. (*See id.* at 5–13.) The letter

also suggested that counsel speak over the phone or have a conference with the Court. (*See id.* at 13.) On April 15, 2020, Plaintiff's counsel sent the Association's counsel a letter explaining why Plaintiff's counsel felt that the proposed topics were appropriate. (*See generally* Dkt. No. 71-4.) That same day, Plaintiff served the Association with notice of a Rule 30(b)(6) deposition that Plaintiff had set for April 30, 2020. (Dkt. No. 71-5 at 3.) The notice contained 60 topics, some of which were new. (*See id.* at 5–12.)

On April 21, 2020, the Association's counsel sent Plaintiff's counsel another letter. (*See generally* Dkt. No. 71-6.) The letter contained more specific objections to each of Plaintiff's proposed topics and asked if Plaintiff's counsel believed that "a phone conference would assist in resolving any issues, or whether we should seek a conference with the Court to assist in the management of discovery in this matter." (*See id.* at 2–11.) Plaintiff's counsel did not respond to the Association's question. (*See generally* Dkt. No. 71-8.) Instead, Plaintiff's counsel sent a letter to the Association's counsel on April 24, 2020, informing the Association's counsel that Plaintiff's counsel would be moving forward with the scheduled deposition and slightly modified topics. (*See id.* at 6–17.)

On April 29, 2020, Plaintiff's counsel deposed Teague in his individual capacity. (Dkt. No. 70 at 3.) At the deposition, the Association's counsel asked Plaintiff's counsel if Plaintiff's counsel was willing to go through the list of proposed Rule 30(b)(6) topics over the phone. (*Id.*) Plaintiff's counsel responded, "read my letters." (*Id.*) The Association's counsel then asked whether Plaintiff's counsel would be willing to postpone the deposition so that the two sides could work together to come up with a mutually agreeable list of topics. (*Id.*) Plaintiff's counsel replied, "read my letters." (*Id.*) The Association's counsel asked whether Plaintiff's counsel was refusing to discuss the issue further. (*Id.*) Plaintiff's counsel said, "yes." (*Id.*) With the Rule 30(b)(6) deposition looming and Plaintiff's counsel refusing to discuss the parties' dispute over the deposition's topics, the Association filed the instant motion for a protective order later that evening. (Dkt. No. 69.) The motion asks the Court to relieve the Association of its obligation to

1  prepare a Rule 30(b)(6) witness on 52 of Plaintiff's proposed topics. (*Id.* at 12.)

2    The next day, Teague appeared at the deposition as the Association's Rule 30(b)(6)

3  witness. (Dkt. No. 81 at 5.) At the start of the deposition, the Association's counsel raised a

4  standing objection to all but topics 7–8, 12–13, 25, 35, 41, and 60. (*Id.* at 21–22.) The

5  Association's counsel said that "Mr. Teague is welcome to testify to other topics . . . , but he will

6  be testifying in his individual capacity, which will not bind the Association." (*Id.* at 22.)

7  Plaintiff's counsel agreed to the standing objection and began asking Teague questions. (*Id.* at

8  21–22.)

9    Plaintiff's counsel proceeded to ask Teague a variant of the following questions on each

10  of the 60 topics: (1) what did the Association do to prepare Teague to discuss the topic; (2) "what

11  was [Teague's] role in gathering all of the knowledge known or reasonably available to Bellevue

12  Park Homeowners Association with respect to [the topic]"; (3) whether there are records that

13  contain facts relating to the topic; (4) who has knowledge of the topic; (5) how much time

14  Teague spent preparing to respond to the topic; (6) whether Teague had spoken with the

15  Association's property management company about the topic; and (7) whether Teague had

16  spoken with the Association's general counsel about the specific topic. (*See id.* at 5–170.)

17  Although the Association's counsel consistently objected to the form of these questions, the

18  Association's counsel allowed Teague to answer every question except those that, in the

19  Association's counsel's view, called for Teague to reveal privileged communications. (*See, e.g.*,

20  *id.* at 23–24, 36, 59–60, 67.) Most commonly, the Association's counsel instructed Teague not to

21  answer questions asking whether Teague had spoken to the Association's general counsel to

22  prepare for a topic. (*See, e.g.*, *id.* at 36, 59–60, 67.)

23    Eventually, Plaintiff's counsel started asking questions that the Association's counsel felt

24  were outside of the scope of the topics that Plaintiff had identified in the Rule 30(b)(6) notice.

25  (*See id.* at 149–69.) The Association's counsel objected to the questions but allowed Teague to

26  answer based on his personal knowledge. (*See id.*) Plaintiff's counsel told the Association's

counsel that "[i]f you continue to object, I am going to suspend this deposition and move to compel the entire deposition." (*Id.* at 156.) The Association's counsel replied that "it is totally appropriate if you ask him these questions, outside of the topics identified in the 30(b)(6) notice, to object to it. In fact, I have to and I am required to in order to preserve the objections." (*Id.* at 156–57.)

After roughly four hours, Plaintiff's counsel asked Teague a few questions on the topics to which the Association did not object. (*See id.* at 165–69.) When Teague was unable to answer those questions to Plaintiff's counsel's satisfaction, Plaintiff's counsel suspended the deposition. (*See id.* at 169.)

Seven days later, Plaintiff's counsel filed the instant motion to compel. (Dkt. No. 80 at 1.) The motion asks the Court to (1) compel Teague to respond to Plaintiff's Rule 30(b)(6) topics; (2) require the Association to designate an individual from Agynbyte, LLC, as another Rule 30(b)(6) witness; (3) require the Association to pay the costs of any future Rule 30(b)(6) depositions; and (4) warn the Association and its counsel that further obstruction and interference may result in sanctions. (*See id.* at 3.) Before filing the motion, Plaintiff did not call the Association's counsel on the phone or meet with the Association's counsel face to face. (*See id.* at 9) (stating that the last telephone conference call between the parties occurred on March 24, 2020).

## II.   DISCUSSION

### A.   The Association's Motion for a Protective Order

#### 1.   Legal Standard

Discovery motions are strongly disfavored. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). One particular method of discovery is the Rule 30(b)(6) deposition. Under Rule 30(b)(6),

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with

reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify . . . . The persons so designated shall testify as to the matters known or reasonably available to the organization.

This procedure allows a party to obtain sworn admissions that are binding on the organization. *Hardin v. Wal-Mart Stores, Inc.*, 2011 WL 11563217, slip op. at 2 (E.D. Cal. 2011). Rule 30(b)(6) is, therefore, "a powerful and important discovery tool." *Id.*

While important, Rule 30(b)(6) is not without its limits. To help an organization prepare for a Rule 30(b)(6) deposition, the party seeking the deposition must "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6); *see Buie v. District of Columbia*, 327 F.R.D. 1, 7 (D.D.C. 2018). In addition, the party must comply with the requirements of Federal Rule of Civil Procedure 26 by proposing topics that are "relevant" and "proportional." *See* Fed. R. Civ. P. 26(b)(1); *Buie*, 327 F.R.D. at 7 n.3 (distinguishing between Rule 30(b)(6)'s reasonable particularity requirement and Rule 26's requirements). Relevant information is "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Proportionality is a matter of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

If a party believes that a Rule 30(b)(6) subpoena or notice is improper, then it may move for a protective order. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of showing that there is good cause for the court to issue the order. *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011).

            2.      Timeliness

Plaintiff argues that the Association's motion for a protective order was "untimely." (*See* Dkt. No 76 at 7–9.) Plaintiff does not explain when the Association needed to file the motion for

1  it to be "timely," but he claims that the Association must have filed it sooner than the night

2  before the Rule 30(b)(6) deposition. (*See id.*)

3          Nothing in the Federal Rules of Civil Procedure supports Plaintiff's position. Federal

4  Rule of Civil Procedure 37(d) excuses a party's failure to appear at a deposition if "the

5  party . . . has a pending motion for a protective order under Rule 26(c)." *See* Fed. R. Civ. P.

6  37(d)(2). Rule 37(d) does not contain a timeliness requirement, and neither does Rule 26(c). *See*

7  Fed. R. Civ. P. 26(c), 37(d)(2). The Court will not read a requirement into the Federal Rules of

8  Civil Procedure that does not exist.[1]

9                    3.   Analysis

10         The Association objects to 52 of the 60 topics in Plaintiff's amended Rule 30(b)(6)

11  notice. While some of those topics might be appropriate, many of them are seriously flawed. For

12  example, topics 3, 5–6, 11, 18, 19, 28, 44–45, 48, 56, and 59 are not stated with reasonable

13  particularity: each topic identifies a subject—usually information found in the Association's

14  business records—without explaining what Plaintiff would like to know about that subject.[2] (*See*

15  Dkt. No. 71-5 at 7–8, 11–12.) Other flawed topics include topics 9–10, 15–17, 20, 22, and 30–

16  31, which appear to be "unreasonably cumulative or duplicative" with other discovery. Fed. R.

17  Civ. P. 26(b)(c)(i). These topics ask for the "identification" of certain information from 2011 to

18  the present, such as "the name and unit number of each unit owner that paid a security deposit to

19  the Association for Dues." (*See* Dkt. No. 71-5 at 7–10.) The Association represents that the

20  information requested in those topics is already being produced, (*see* Dkt. No. 69 at 10), and

21

22  [1] Even if Rule 26(c) or Rule 37(d) contained a timeliness requirement, the Court would conclude
23  that the Association's motion was timely. The record shows that the Association waited to file
    their motion because the Association's counsel was trying to work with Plaintiff's counsel to
24  resolve the dispute without getting the Court involved. (*See* Dkt. Nos. 70 at 3, 71-6 at 2–11.)

25  [2] Topic 6 is illustrative. It asks about "[t]he assessments collected by the Association on behalf of
    Bellevue Park" from 2011 to the present. (Dkt. No. 71-5 at 7.) Since 2011, the Association has
26  collected over 8,500 assessments. (Dkt. No. 82 at 5.) The Association cannot prepare a witness to
    speak to every facet of over 8,500 assessments.

ORDER
C18-1385-JCC
PAGE - 7

1  Plaintiff does not explain why he needs a Rule 30(b)(6) witness to identify information readily

2  found in the Association's records.[3]

3      Given that so many of Plaintiff's topics are flawed, the Court GRANTS the Association's

4  motion and ORDERS Plaintiff to meet and confer with the Association. At the meeting, Plaintiff

5  must make a good faith effort to revise his topics so that they are stated with reasonable

6  particularity, are not unreasonably duplicative of prior discovery, and are not so broad that they

7  place an unreasonable burden on the Association. Failing to meet and confer in good faith will

8  expose either party to heavy sanctions.

9              4.    <u>Attorney Fees</u>

10     If a court grants a motion for a protective order, the court ordinarily "must, after giving

11  an opportunity to be heard, require the party or deponent whose conduct necessitated the motion,

12  the party or attorney advising that conduct, or both to pay the movant's reasonable expenses

13  incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). This

14  mandatory fee-payment rule has three exceptions: (1) "the movant filed the motion before

15  attempting in good faith to obtain the disclosure . . . without court action"; (2) "the opposing

16  party's nondisclosure . . . was substantially justified"; or (3) "other circumstances make an award

17  of expenses unjust." *See id.*

18     Here, the Court has granted the Association's motion to compel, and none of the

19  exceptions to the mandatory fee-payment rule apply. The Association's counsel offered to meet

20  and confer with Plaintiff's counsel three times—twice via letter and once in person—but

21  Plaintiff's counsel refused, telling the Association's counsel to "read my letters." (*See* Dkt. Nos.

22  70 at 3, 71-3 at 13, 71-6 at 2.) In addition, Plaintiff's counsel was not substantially justified in

23

24  [3] The Court recognizes that "there is a meaningful difference between receiving a document from
    an entity and asking the entity's corporate representative about that document live and under
25  oath." *Naini v. King Cty. Pub. Hosp. Dist. No. 2*, Case. No. C19-0886-JCC, Dkt. No. 109 at 6
    (W.D. Wash. 2019). However, Plaintiff has failed to explain why he needs the Association's
26  corporate representative to identify such an extensive set of records.

proposing 60 broad topics and then refusing to meet and confer over reasonable changes to those topics. If Plaintiff's counsel had met with the Association's counsel, Plaintiff's counsel could have clarified that although topic 6 seemingly asked about the 8,500 assessments that the Association collected since 2011, Plaintiff wished to inquire only about five or six "special assessments." (*See* Dkt. No. 76 at 5.) But Plaintiff's counsel did not clarify topic 6 or any other topic, which left the Association with no choice but to ask the Court to intervene. Finally, there are no circumstances that would make an award of expenses unjust.

Because none of the exceptions to the mandatory fee-payment rule apply, the Court ORDERS Plaintiff's counsel to pay the Association's reasonable expenses incurred in bringing its motion for a protective order. The Association must provide the Court with an estimate of its reasonable expenses within 14 days of the date of this order. If Plaintiff's counsel wishes to contest those expenses, she must do so no later than 7 days after the Association provides its estimate.

### B.     Plaintiff's Motion to Compel

In the Western District of Washington, "[a]ny motion for an order compelling disclosure or discovery must include a certification, in the motion or in a declaration or affidavit, that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to resolve the dispute without court action." W.D. Wash. Local Civ. R. 37(a)(1). "A good faith effort to confer with a party or person not making a disclosure or discovery requires a face-to-face meeting or a telephone conference." *Id*. The party requesting a motion to compel must also show that their efforts to meet and confer resulted in a genuine impasse. *See Advanced Hair Restoration, LLC v. Hair Restoration Ctrs., LLC*, C17-0709-RSM, Dkt. No. 29 at 3 (W.D. Wash. 2018) (denying motion to compel because "[t]here is no evidence that the parties reached an impasse").

Plaintiff's counsel blatantly ignored her obligation under the Western District of Washington's Local Rules. The day before the Rule 30(b)(6) deposition, Plaintiff's counsel

outright refused to discuss the parties' dispute over the topics for the deposition. (*See* Dkt. No. 70 at 8.) And after the deposition took place, Plaintiff's counsel did not even attempt to confer with the Association's counsel about the disputed topics. (*See* Dkt. No. 80 at 9.) This behavior is the opposite of a "good faith . . . effort to resolve the dispute without court action." W.D. Wash. Local Civ. R. 37(a)(1).

Plaintiff's counsel claims that she complied with the Local Rules because she discussed the Rule 30(b)(6) topics with the Association's counsel during a conference call on March 10, 2020. (*See* Dkt. No. 80 at 6.) But the March 10 conference call was a preliminary discussion about numerous discovery issues that took place a month before Plaintiff finalized the list of proposed Rule 30(b)(6) topics, a month and a half before the Rule 30(b)(6) deposition took place, and nearly two months before Plaintiff moved to compel. (*See* Dkt. No. 54–6 at 2–3.) While this type of preliminary discussion is important, it does not satisfy a party's obligation under the Local Rules. Those rules require that a party do more than talk about a discovery issue over the phone at some point during the litigation.

The Western District of Washington takes a party's obligation to meet and confer seriously. Local Civil Rule 37 specifically warns counsel that they may be sanctioned "[i]f the court finds that counsel . . . willfully refused to confer, failed to confer in good faith, or failed to respond on a timely basis to a request to confer." *See* W.D. Wash. Local Civ. R. 37(a)(1). As discussed above, Plaintiff's counsel willfully refused to confer with the Association's counsel over the Rule 30(b)(6) topics. (*See* Dkt. No. 70 at 3.) The Court therefore DENIES Plaintiff's motion to compel and ORDERS Plaintiff's counsel to show cause within 14 days of the date of this order why she should not be sanctioned.

## C.   Plaintiff's Request for Sanctions

Plaintiff asks the Court to sanction the Association because the Association failed to prepare Teague to discuss the contested topics at the Rule 30(b)(6) deposition. Plaintiff's request

is frivolous.[4] (*See* Dkt. No. 80 at 5–9, 12.) Rule 37(d)(2) excuses a Rule 30(b)(6) witness from appearing at a deposition if the party who is supposed to produce the witness "has a pending motion for a protective order under Rule 26(c)." The Association "ha[d] a pending motion for a protective order." (*See generally* Dkt. No. 69.) Accordingly, the Association was not required to produce a Rule 30(b)(6) witness to discuss the topics that were disputed in the Association's motion.

To the extent that Plaintiff asks the Court to sanction the Association or the Association's counsel for other behavior at the Rule 30(b)(6) deposition, the Court finds that request to be baseless. The Association's counsel objected to the form of most questions that addressed disputed topics. (*See, e.g.*, Dkt. No. 81 at 18–19.) Those objections were unnecessary given that Plaintiff's counsel had granted the Association's counsel a standing objection to the disputed topics at the start of the deposition. (*See id.* at 21.) However, the objections were also "stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). In addition, the objections did not meaningfully interfere with Teague's ability to answer questions; in most instances, Teague simply proceeded to answer a question as if the Association's counsel had not objected.[5] (*See, e.g.*, Dkt. No. 81 at 40–42.) Thus, while the Association's counsel unnecessarily objected to questions, those objections do not warrant sanctions. Accordingly, the Court DENIES Plaintiff's request for sanctions.

---

[4] Plaintiff's motion also contains inappropriate *ad hominin* attacks. For example, Plaintiff says that the Association's objections to his Rule 30(b)(6) topics "display a lack of understanding of the English language." (Dkt. No. 80 at 5.) This type of argument has no place in federal court.

[5] The following exchange is illustrative:

Q. (By Ms. Anderson) And what was your role in gathering information with respect to notice topic No. 9?

Ms. Akhbari: Object to form.

The Witness: I, as far as I know, didn't gather information for Notice topic No. 9, I would have relied on that kind of historical data coming from our accounting arm at Agynbyte.

(Dkt No. 81 at 40.)

ORDER
C18-1385-JCC
PAGE - 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### III.    CONCLUSION

For the foregoing reasons, the GRANTS the Association's motion for a protective order (Dkt. No. 69), DENIES Plaintiff's motion to compel (Dkt. No. 80), ORDERS Plaintiff's counsel to pay the Association's reasonable expenses incurred in filing its motion, and ORDERS Plaintiff's counsel to show cause why she should not be sanctioned for discovery violations. The Association must provide the Court with an estimate of its reasonable expenses within 14 days of the date of this order. If Plaintiff's counsel wishes to contest those expenses, Plaintiff's counsel must do so no later than 7 days after the Association provides its estimate.

DATED this 20th day of August 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C18-1385-JCC
PAGE - 12