THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABOLFAZL HOSSEINZADEH,

                    Plaintiff,

      v.

BELLEVUE PARK HOMEOWNERS
ASSOCIATION, *et al.*,

                 Defendants.

CASE NO. C18-1385-JCC

ORDER

This matter comes before the Court on Defendants Bellevue Park Homeowners Association ("BPHOA") and Jennifer Gonzales' motion for summary judgement (Dkt. No. 184). Having considered the parties' briefing[1] and the relevant record, and finding oral argument unnecessary, the Court hereby GRANTS the motion for the reasons explained herein.[2] In

---

[1] The Court has not considered the portion of Plaintiff's response brief exceeding 24 pages. *See* W.D. Wash. Local Civ. R. 7(e)(3).

[2] Plaintiff, in responding to BPHOA's summary judgment motion, asks the Court to defer consideration of BPHOA's motion pursuant to Federal Rule of Civil Procedure 56(d) until after the Rule 30(b)(6) deposition of BPHOA's representative. (Dkt. No. 207 at 15.) But Plaintiff has not submitted the requisite affidavit identifying what specific facts further discovery would reveal and explaining why those facts preclude summary judgment. *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Accordingly, the Court declines to defer consideration of BPHOA's summary judgment motion.

1   addition, the Court GRANTS BPHOA's request (Dkt. No. 210 at 12) to strike Plaintiff's brief

2   (Dkt. No. 204) responding to Defendant Gonzales' joinder notice (Dkt. No. 189) and DENIES

3   Plaintiff's motion (Dkt. No. 212) for leave to file a surresponse.[3]

4   **I.   BACKGROUND**

5          Plaintiff has a longstanding dispute with members of Bellevue Park Homeowner's

6   Association, as well as BPHOA itself. The Court has described Plaintiff's allegations in previous

7   orders and will summarize only those relevant to the instant motion. (*See generally* Dkt. Nos. 34,

8   143, 144, 150.) Plaintiff, who was born in Iran and is Muslim, alleged that BPHOA, both directly

9   and through its representatives, discriminated against Plaintiff because of his national origin and

10  religion and made legally-actionable false statements about Plaintiff. (*See generally* Dkt. No. 1.)

11  The Court dismissed some of Plaintiff's claims in previous orders. (*See* Dkt. Nos. 34, 220.)

12  BPHOA and Ms. Gonzales move for summary judgment on Plaintiff's remaining claims. (Dkt.

13  Nos. 184, 189.) Specifically, BPHOA seeks dismissal of Plaintiff's defamation and false light

14  claims, along with Plaintiff's claims resulting from BPHOA's alleged violations of the Fair

15  Housing Act ("FHA"), the Civil Rights Act, Washington's Law Against Discrimination

16  ("WLAD"), and Washington's Consumer Protection Act ("WCPA"). (*See* Dkt. Nos. 184.) Ms.

17  Gonzales also seeks dismissal of the defamation and false light claims against her. (Dkt. Nos. 1,

18  189.)

19  **II.   DISCUSSION**

20        **A.   Legal Standard**

21          In general, the Court will "grant summary judgment if the movant shows that there is no

22  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

23  law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the

24

25          [3] Plaintiff already exceeded the page limits afforded by Local Rule 7 in responding to
    BPHOA's motion to dismiss and has not demonstrated why the evidence and arguments included
26  in this brief could not have been made within his response brief.

governing law," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must "show[] that the materials cited do not establish the absence . . . of a genuine dispute" or "cit[e] to particular parts of . . . the record" that show there is a genuine dispute. Fed. R. Civ. P. 56(c)(1). When analyzing whether there is a genuine dispute of material fact, the "court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

**B.**     **Defamation & False Light Claims**

The following statement by Ms. Gonzales to a U.S. Bank Vice President serves as the basis for Plaintiff's remaining defamation and false light claims:[4]

//

---

[4] Plaintiff also alleges in deposition testimony that Ms. Gonzales made a second defamatory statement. (Dkt. No. 46 at 122, 125–126.) But this allegation is not contained in Plaintiff's complaint. (*See generally* Dkt. No. 1 at 8–9.) To satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2), there must be some reference to the statement in the complaint. *See Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir. 1979) (requiring a plaintiff to plead a defamatory statement with specificity to allow a defendant to "evaluate the possibility of a privilege."); *see also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("where . . . the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."). Because the complaint lacks such a reference, the Court will not consider the alleged statement here.

Karen,

I did not hear back from you today, so I wanted to follow-up via email. As I mentioned, a homeowner (actually, he is not even a homeowner-he is a representative for a homeowner) has spent the last 6 months or so trying to obtain access to the HOA funds, and was successful at this at Wells Fargo . . . Our accounts at US Bank are frozen and our other account gone. We have no idea *why* the account is frozen. We have past due bills and no way to pay them. We have no way to collect HOA dues. This is a continuing nightmare for many people. What documentation is need [sic] to restore our account and keep Ab[5] and his cohorts from taking our funds? I can have our HOA attorney contact you and provide you with any documentation you require. I must say, though, this is a very urgent matter for us. We have already lost a lot of money and the longer we don't pay bills, the more fees we incur. We are ready and willing to provide whatever documentation needed so that we can fix this ASAP. I appreciate your help and urgency in this matter.

~Jeni Gonzales

(Dkt. No. 46 at 115 (emphasis in original).) Ms. Gonzales made the statement via e-mail while serving as a BPHOA Director.

1.   Defamation

A plaintiff must prove four elements to make out a claim for defamation: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. *Mark v. Seattle Times*, 635 P.2d 1081, 1088 (1981). When a defendant in a defamation action moves for summary judgment, the plaintiff has the burden of establishing a prima facie case on all four elements. *LaMon v. Butler*, 770 P.2d 1027, 1029 (1989). This must consist of specific, material facts rather than conclusory statements that would allow a jury to find that each element of defamation exists. *Id.* (citing *Herron v. Tribune Pub'g Co.*, 736 P.2d 249, 258 (1987)). Summary judgment plays a "particularly important role" in defamation cases:

Serious problems regarding the exercise of free speech and free press guaranteed by the First Amendment are raised if unwarranted lawsuits are allowed to proceed to trial. The chilling effect of the pendency of such litigation can itself be sufficient to curtail the exercise of these freedoms.

---

[5] Plaintiff is commonly referred to as "Ab." (*See, e.g.*, Dkt. No. 185-2 at 4, 5; 185-4 at 5, 8.)

*Mark*, 635 P.2d at 1088 (internal quotations omitted).

Ms. Gonzales' statement was intended to inform U.S. Bank, one of BPHOA's financial institutions, that Plaintiff was no longer a BPHOA board member and, therefore, was not authorized to conduct business on BPHOA's behalf. (Dkt. No. 184 at 11.) Ms. Gonzales did so after learning that Wells Fargo, another institution where BPHOA banked, had cashed out a certificate of deposit holding more than $100,000 in BPHOA funds based upon Plaintiff's instructions while he allegedly served as a BPHOA representative. (Dkt. No. 185-5 at 2–3.)

Ms. Gonzales' communication was subject to a common-interest privilege and, absent an abuse of that privilege, is not a basis for a defamation claim. *Valdez-Zontek v. Eastmont Sch. Dist.*, 225 P.3d 339, 347 (Wash. App. 2010) (citing *Bender v. City of Seattle*, 664 P.2d 492, 504 (Wash. 1983)). The "common interest" privilege arises when "the declarant and the recipient[s] have a common interest in the subject matter of the communication." *Moe v. Wise*, 989 P.2d 1148, 1154 (Wash. App. 1999) (citing *Ward v. Painters' Local Union No. 300*, 252 P.2d 253, 257 (Wash. 1953)). This includes communications between members of different organizations engaging in a "routine business transaction," so long as they have a "common pecuniary interest." *Id.* (citing *Williams v. Blount*, 741 P.2d 595, 596 (Wyo. 1987)).

An otherwise privileged communication can be stripped of its privilege if a defendant "kn[e]w the matter to be false or act[ed] in reckless disregard as to its truth or falsity," i.e., acted with actual malice. *Moe*, 989 P.2d at 1157. But a plaintiff must establish this by clear and convincing evidence. *Id.* (citing *Bender*, 664 P.2d. at 505). Therefore, to defeat summary judgment, Plaintiff must present sufficient facts to allow a rational juror to make a finding of actual malice. *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1134–35 (9th Cir.2003).

Plaintiff presents no facts, or even argument, demonstrating actual malice by Ms. Gonzales in his summary judgment briefing. (Dkt. No. 207 at 25–26.) Instead, he buries his argument in his brief in response to Ms. Gonzales' joinder notice. (Dkt. No. 204 at 17–21.) This

1   appears to be an attempt to avoid the page limits provided in the Local Rules and, on this basis,

2   the Court struck Plaintiff's response to the joinder notice.[6] *See* W.D. Wash Local Civ. R. 7(e)(3).

3      Even if the Court were to consider Plaintiff's argument in his stricken brief, it is

4   unavailing. First, Plaintiff did not present sufficient facts to demonstrate a genuine dispute

5   worthy of a juror's consideration as to whether Ms. Gonzales demonstrated actual malice—a

6   very high bar. (*See generally id.* at 17–21.) Next, Plaintiff argued that there is no privilege

7   because "US Bank did not have a common interest in the BPHOA account as did Gonzales."

8   (Dkt. No. 204 at 16–17.) This incorrect. BPHOA, U.S. Bank, and Ms. Gonzales, as BPHOA's

9   representative, all had interests in safeguarding the financial assets that BPHOA held at U.S.

10  Bank. Accordingly, the Court GRANTS Defendants' motion for summary judgment on

11  Plaintiff's defamation claim.

12         2. <u>False Light</u>

13     Like a defamation claim, a "plaintiff must present a prima facie case of false light to

14  overcome a motion for summary judgment." *Seaquist v. Caldier*, 438 P.3d 606, 616 (Wash. App.

15  2019). A false light claim arises when (1) someone publicizes a matter that places the plaintiff in

16  a false light, (2) "the false light would be highly offensive to a reasonable person," and (3) "the

17  actor knew of or recklessly disregarded the falsity of the publication and the false light in which

18  the other would be placed." *Corey v. Pierce Cnty.*, 225 P.3d 367, 373 (Wash. App. 2010) (citing

19  *Eastwood*, 722 P.2d at 1297). The final element is dispositive in this instance. As described

20  above, *see supra* Part II.B.1., Plaintiff presents inadequate facts or evidence to suggest that Ms.

21  Gonzales knew of or recklessly disregarded the falsity of her statement, both in Plaintiff's

22  response to Defendants' motion for summary judgment and in Plaintiff's stricken brief in

23  response to Ms. Gonzales' joinder notice. Accordingly, the Court GRANTS Defendants' motion

24  for summary judgment of Plaintiff's false light claim.

25  //

26  ----

   [6] *See supra* note 3.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### C.    Discrimination Claims

#### 1.  <u>Fair Housing Act</u>

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Moreover, it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" rights afforded by the FHA. 42 U.S.C. § 3617. FHA claims must be brought "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Although claims that a defendant engaged in a continuous course of discriminatory conduct may allow a plaintiff to recover for damages that precede the limitations period, "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *See Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (citing *Collins v. United Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir. 1975)). Plaintiff alleges that, based upon his religion and national origin, BPHOA intentionally discriminated against him, harassed and intimidated him and his family, and treated him in a discriminatory manner, directly and through its representatives. (*See* Dkt. No. 1 at 12–14.)

The Court analyzes FHA disparate treatment claims under the three-stage framework set forth in the *McDonnell Douglas/Burdine* test. *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997). The *McDonnell Douglas* framework first requires a prima facie showing that: "(1) plaintiff is a member of a protected class; (2) plaintiff applied for [a benefit or treatment] and was qualified to receive it; (3) the [benefit or treatment] was denied despite being qualified; and (4) defendant approved [the benefit or treatment] for a similarly situated party during a period relatively near the time plaintiff was denied [the benefit or treatment]." *Id.* After a plaintiff proves a prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for its action." *Id.* Finally, if the defendant has carried its burden, the

1    plaintiff must then prove, by a preponderance of the evidence, that the reason asserted by the

2    defendant is "mere pretext." *Id.*

3         In his complaint, Plaintiff alleges that the following acts represent disparate treatment:

4    BPHOA's foreclosure of his property; BPHOA's initial refusal to permit him to serve as a

5    member of its Board of Directors in March 2016, which was later reversed; the homeowners'

6    removal of him from the Board in January 2017; and BPHOA's failure to provide him personal

7    records. (Dkt. No. 1 at 6, 12.)[7] The Court previously dismissed Plaintiff's FHA claims based on

8    the foreclosure proceeding as time-barred and need not revisit that ruling. (Dkt. No. 34 at 12.)

9    Similarly, FHA claims relating to Plaintiff's failed March 2016 election to the Board of Directors

10   are also time-barred. (*See* Dkt. No. 186-21 at 2.) As to Plaintiff's January 2017 removal from the

11   Board, this was an action by the Bellevue Park *homeowners* rather than BPHOA. (*See* Dkt. No.

12   186 at 8–10.) Thus, it cannot form the basis of an FHA claim against BPHOA.

13        Finally, regarding the personal records, Plaintiff provides evidence suggesting that

14   BPHOA treated him differently than "[o]ther members [who] could see their [personal unit]

15   records just by asking" whereas Plaintiff was told "that he had to give 60 days' advance notice"

16   and "eventually had to hire an attorney to see the records." (Dkt. No. 207 at 13; *see* Dkt. No.

17   208-25 at 2–5[8].) This is sufficient to establish a prima facie case. However, while BPHOA's

18   response to Plaintiff's request was not consistent with the governing documents, (*see* Dkt. No.

19   52-1 at 60, 114), it is not necessarily indicative of disparate treatment *due to national origin or*

20   *religion*. And here, BPHOA articulated a legitimate, nondiscriminatory reason: the parties'

21

22        [7] In subsequent briefing, Plaintiff also alleged that BPHOA's formation of a litigation
     committee, its failure to indemnify him for his attorney fees related to his Board service, and its
23   refusal to repair property damage to his unit represented disparate treatment. (Dkt. No. 207 at
     11–14, 19–22.) Because those allegations were not contained in Plaintiff's operative complaint,
24   the Court need not address them here. *See* Fed. R. Civ. P. 8(a)(2); *supra* note 4.

25        [8] BPHOA objects to Plaintiff's reliance on this document as unauthenticated hearsay.
     (Dkt. No. 210 at 2.) The Court need not address this objection, as it is undisputed that BPHOA's
26   property manager did, in fact, limit Plaintiff's access to the records at issue. (*See generally* Dkt.
     No. 210 at 10–11.)

litigation and dispute history required BPHOA to take special care before releasing records to Plaintiff. (Dkt. No. 210 at 11.) Therefore, to survive summary judgment, Plaintiff must put forth *some* evidence to show that these reasons are "mere pretext" and that the true reason for the BPHOA's delay in producing his personal records was a discriminatory motive. Plaintiff fails to meet this burden. While Plaintiff makes allegations and offers evidence of animus based upon his religion or national origin by certain Bellevue Park *homeowners*, he fails to present evidence of animus *by BPHOA*. Instead, what he presents suggests a dysfunctional and litigious relationship between himself and BPHOA.

Accordingly, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's FHA claim.

### 2. Civil Rights Act

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. However, the "Civil Rights Act, like the FHA, was not intended as a springboard to bring neighbor disputes into a federal forum." *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1150 (S.D. Fla. 2004) (citing *Stackhouse v. DeSitter*, 620 F. Supp. 208, 209, 211 (N.D. Ill.1985)).

To prove racial discrimination under Section 1982, Plaintiff must show that BPHOA acted with an intent to discriminate on the basis of his religion or national origin. *Shaare Tefile Congregation v. Cobb*, 481 U.S. 615, 617 (1987). The statute of limitations for bringing a Section 1982 claim is three years, as determined by reference to the statute of limitations under WLAD. *See Mitchell v. Sung*, 816 F.Supp. 597, 600 (N.D.Cal.1993) ("because section 1982 does not have a statute of limitations, courts apply the applicable state statute of limitations"); Wash. Rev. Code § 4.16.080(2).

In order to prevail on his Section 1982 claim, Plaintiff must establish (1) membership in a protected class; (2) discriminatory intent; and (3) interference with the rights or benefits

1   connected with the ownership of property. *Daniels v. Dillards, Inc.*, 373 F.3d 885, 887 (8th Cir.

2   2004). It is undisputed that Plaintiff is a member of a protected class. However, to survive a

3   motion for summary judgment, Plaintiff must put forth at least some evidence that BPHOA or its

4   representatives *intentionally* deprived him of his property rights because of discriminatory

5   animus. *See, e.g., Lawrence*, 318 F.Supp.2d at 1144; *Whisby-Myers v. Kiekenapp*, 293 F. Supp.

6   2d 845, 850 (N.D. Ill. 2003); *Awkard v. Rammelsberg*, 2019 WL 3308385, slip op. at 3 (D.S.C.

7   2019). Events occurring within the relevant statute of limitations[9] that are adequately pled by

8   Plaintiff include statements by various homeowners both before and after their service on

9   BPHOA's Board, BPHOA's initial refusal to permit Plaintiff to serve as a member of its Board

10  in March 2016, the homeowner's later removal of Plaintiff from the Board in January 2017; and

11  BPHOA's failure to provide Plaintiff immediate access to his personal records. Actions taken by

12  the homeowners, rather than BPHOA, cannot serve as a basis for a claim against BPHOA. Nor

13  can actions taken by BPHOA Directors predating and postdating their service to BPHOA.

14  Plaintiff's remaining allegations—his failed March 2016 election to BPHOA's Board of

15  Directors and BPHOA's failure to provide certain records—do not represent acts of *intentional*

16  discrimination.

17        Accordingly, the Court GRANTS Defendants' motion for summary judgment on

18  Plaintiff's Section 1982 claim.

19                    3.  <u>Washington Law Against Discrimination</u>

20        WLAD prohibits discrimination in "any of the accommodations, advantages, facilities, or

21  privileges of any place of public resort, accommodation, assemblage, or amusement." Wash. Rev.

22  Code § 49.60.030(1)(b). Additionally, it is unlawful to discriminate based on national origin in the

23  course of real estate transactions. Wash. Rev. Code § 49.60.030(1)(c). The statute of limitations for a

24

25        [9] The Court declines Plaintiff's request to equitably toll the statute of limitations for a
    Section 1982 claim based on BPHOA's foreclosure action. (*See* Dkt. No. 207 at 25.)

26

ORDER
C18-1385-JCC
PAGE - 10

WLAD claim is three years. *Antonius v. King County*, 103 P.3d 729, 732 (Wash. 2004).

The following allegedly discriminatory actions by BPHOA occurred within the statute of limitations period:[10] the initial refusal to permit Plaintiff to serve as a member of its Board of Directors in March 2016, which was reversed in April 2016,[11] and the denial of access to his personal records. (Dkt. No. 207 at 23.) Both of which represent alleged acts of disparate treatment, which the Court will again consider under the *McDonnell Douglas* burden-shifting framework. *See Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1092 (W.D. Wash. 2014). As to BPHOA's initial refusal to permit Plaintiff to serve as a member of its Board: Plaintiff has established a prima facie case that he was initially denied membership to the Board. (*See* Dkt. No. 208-8 at 10–11.) However, BPHOA provides a nondiscriminatory reason for its action—a lack of a quorum at the meeting where Plaintiff was elected. Plaintiff fails to present sufficient evidence, in light of his appointment to the Board *the next month*, that the lack of a quorum was merely a pretext. The Court already applied the burden-shifting framework in finding for BPHOA on Plaintiff's Section 1982 claim regarding the limitations that BPHOA imposed on Plaintiff's access to his personal records: *See supra* Part II.C.2. That same analysis applies here. Plaintiff's remaining allegations describe acts that either did not occur within the limitations period or were not undertaken by persons during the time they served as BPHOA representatives. (*See* Dkt. No. 207 at 23.)

Accordingly, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's WLAD claim.

---

[10] As with Plaintiff's Section 1982 claim, *see supra* note 9, the Court declines Plaintiff's request to equitably toll the statute of limitations for a WLAD claim based on BPHOA's foreclosure action. (*See* Dkt. No. 207 at 25.)

[11] Plaintiff also argues that BPHOA's failure to indemnify him for his attorney fees related to his Board service and its refusal to repair property damage to his unit represented WLAD-actionable discriminatory acts. (Dkt. No. 207 at 23.) Because those allegations were not contained in Plaintiff's operative complaint, the Court need not address them here. *See* Fed. R. Civ. P. 8(a)(2); *supra* note 4.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**D.      Washington Consumer Protection Act Claim**

To prove a CPA claim, a plaintiff must establish the following elements: "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). "A per se unfair trade practice exists when a statute that has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 396 P.3d 351, 367 (Wash. Ct. App. 2017). Violation of the WLAD in the course of trade or commerce, as defined in the CPA, is a *per se* CPA violation. Wash. Rev. Code § 49.60.030(3). The CPA defines "trade or commerce" as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington." Wash. Rev. Code § 19.86.010(2). Finally, a CPA claim is subject to a four-year statute of limitations. *O'Neill v. Farmers Ins. Co.*, 125 P.3d 134, 140 (Wash. Ct. App. 2004). The cause of action "accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief." *Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. 2014) (internal quotations omitted).

Alleged examples of disparate treatment that the Court previously considered in finding for BPHOA on Plaintiff's WLAD claim will not be readdressed here. *See supra* Part II.C.3. Plaintiff's remaining allegation relates to the foreclosure proceeding, which Plaintiff asserts resulted in over $100,000 in attorney fees and costs. (Dkt. No. 207 at 23.) In November 2014, BPHOA placed a lien on Plaintiff's unit for unpaid special assessments and thereafter obtained a foreclosure decree. (Dkt. Nos. 186-12 at 2–4, 186-17 at 2–5.) Plaintiff argues that the foreclosure was not only discriminatory, but that it violated the CPA. (Dkt. No. 207 at 23–24.) The Court strains to understand the argument. The liens and foreclosure were permissible under BPHOA's governing documents and ultimately approved by the King County Superior Court. (*See* Dkt. Nos. 52-1 at 16, 62–63; 186-17 at 2–5.) Therefore, they cannot form the basis of a CPA claim.

Accordingly, the Court GRANTS Defendants' motion for summary judgment on

1    Plaintiff's CPA claim.

2    **III.     CONCLUSION**

3           For the foregoing reasons, the Court GRANTS Defendants BPHOA and Gonzales',

4    motion for summary judgment (Dkt. No. 184), DENIES Plaintiff's Rule 56(d) request (Dkt. No.

5    207 at 15), GRANTS BPHOA's request to strike Plaintiff's brief responding to Defendant

6    Gonzales' joinder notice (Dkt. No. 210 at 12) and DENIES Plaintiff's motion for leave to file a

7    surresponse (Dkt. No. 212). Plaintiff's remaining claims are dismissed with prejudice.

8

9           DATED this 12th day of January 2021.

10

11

12

13                                              John C. Coughenour
                                                UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26